## In re Charter for Club

*George Little*, for petitioner.

REID, P. J., September 18, 1934.—The application for charter in above case specifies the place at which the proposed club will operate as no. 209 Chartiers Avenue in the Borough of McKees Rocks.

The purposes specified are: "To maintain a club for social enjoyment by conducting a place where its members may meet and engage in social intercourse, and to promote and encourage athletics among its members."

The application is in proper form and was duly advertised as required by law.

No exceptions were filed and, on July 10, 1934, the articles of incorporation, with proofs of publication, were presented to the court and a master was appointed to inquire as to the propriety of granting the application. He heard the testimony adduced on behalf of the applicants, and on August 10, 1934, filed his report recommending the granting of the charter. The case was placed on the argument list and was heard on September 4, 1934.

The report of the master is in a very satisfactory form, indicating a careful consideration of the duties required of him, and gives, in a logical and orderly way, the basis of his conclusions as to the propriety and desirability of granting the charter.

While thus commending the manner in which the master performed his duties, we cannot agree with his conclusions that the proposed corporation "will serve a useful and worthy purpose in its community." A careful consideration of the testimony convinces us that this charter should not be granted, for the following reasons:

In the first place the location of the proposed club is not suitable for the establishment and maintenance of a bona fide club which will be a dignified and worthy home for the social and athletic activities of 100 or more young men whom it proposes to accommodate there. The club premises consist of the first floor of a building at no. 209 Chartiers Avenue, and it is evident that the remaining part of the building is occupied as a residence by Harvey A. Munn, the secretary of the organization, and his brother, Richard Munn, the treasurer.

The floor space occupied, or to be occupied, by the club, is 25 x 150 feet, for

which a rental of $25 per month is said to be paid. To whom it is paid or who the owner of the premises is does not appear. Neither does it appear who the former tenants of the first floor were, or the purposes for which it was used. To allow the activities of such a club to be conducted in such premises is running the risk of having the remaining portion of the property used in such a manner as to bring discredit on the club and its members. Moreover, it is suggestive of "a one-man club" or a "two-men club" to find that the two officers above named are apparently in possession of the remaining portion of the building. With the first-floor space occupied by dancers, billiard tables, athletic bouts and a miscellaneous assemblage of 100 or more members, not to speak of the visitor-guests and chance spectators, it is clear that the orderly conduct of the affairs of such a club—a meeting place for young men to read, converse or otherwise indulge in proper social relations—would be most seriously interfered with. Certainly such a club in such a place cannot be held to be one that would be a benefit to the community.

We have already referred to the Munn brothers, one of whom, the treasurer, is barely 21 years of age. The president, G. C. Peters, is also 21. These are two of the directors whose youth suggests that they are not suitable persons to conduct a club in which, in all probability, it is intended to dispense liquors to members, who can obtain the privileges of the club by paying the specified inadequate dues of 50 cents per month. Such a club, to be properly conducted, should have as its leaders men of mature years and judgment and of unassailable reputation.

The whole basis of the organization is wrong. At the most, the testimony shows that the entire personal assets of the club, consisting of a ping-pong and billiard table and of some rowboats or skiffs, do not exceed $200 in value. The certificate, however, definitely states that it has no assets, real or personal. It has an undefined membership of "100 or more", who pay no initiation fee and are expected to pay 50 cents per month in dues. There are no bylaws and there is no standard of membership, or means of acquiring membership set forth in the testimony. It would seem that any young man of 21 can become a member with scarcely any formality and little or no previous investigation as to his fitness, character, reputation and former life. Of the 100 or more members, Harvey A. Munn testified that not more than 100 had paid their dues: "A few over a hundred, but some haven't paid their dues and we don't know whether we will keep them or not." The same witness frankly says, as to the requirements for membership, "well, except for the age and the citizenship, we don't have any other requirements except that they shall be socially or athletically interested in the activities we have."

"Q. Do they necessarily have to be recommended by one of the members?"

"A. Yes; we don't accept any one on their own application."

In other words there is no provision that membership must rest on good moral character, sobriety or good citizenship—any one recommended by a member may be admitted.

There is no provision for enforcing the payment of the monthly dues of 50 cents. The treasurer, Richard Munn, testified on this subject as follows:

"Q. In case of default in payment of dues, what remedy do you take against your members?"

"A. When we hold the meetings . . . and after the meeting the ones that aren't paid up we call their names out, and we don't press them for dues or anything, and after 3 months the officers will take action. We haven't expelled anybody yet—are trying to keep a good group together."

It is evident that the club hopes to live off the dances, boxing matches and

other similar activities to be held in the clubroom, to which the public will be invited. With liquor available, and no provision for the previous determination of the moral fitness of the members, it may be readily seen that such assemblages will not be conducive to the welfare of the members or of the community at large.

The application must be refused.